UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TINA MARIE TUPER,

         Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of the Social Security
Administration,

         Defendant.
_____

DECISION & ORDER

17-CV-6288P

## PRELIMINARY STATEMENT

    Plaintiff Tina Maria Tuper ("Tuper") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 14).

    Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 12). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

## BACKGROUND

**I.     Procedural Background**

Tuper protectively filed for SSI on April 22, 2013, and filed for a period of disability and DIB on May 17, 2013, alleging disability beginning on February 12, 2013, due to two broken discs in her back. (Tr. 15, 145, 177).[1] On July 16, 2013, the Social Security Administration ("SSA") denied Tuper's claim for benefits, finding that she was not disabled. (Tr. 75-82). Tuper requested and was granted a hearing before Administrative Law Judge Michael W. Devlin (the "ALJ") (Tr. 23, 86-88, 131), which occurred on March 2, 2015 (Tr. 28-52). In a decision dated June 30, 2015, the ALJ found that Tuper was not disabled and was not entitled to benefits. (Tr. 15-27).

On March 10, 2017, the Appeals Council denied Tuper's request for review of the ALJ's decision. (Tr. 1-7). Tuper then commenced this action on May 8, 2017, seeking review of the Commissioner's decision. (Docket # 1).

## DISCUSSION

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also*

---

[1] The administrative transcript shall be referred to as "Tr. __."

*Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). When assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;
>
> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform his past work; and
>
> (5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

### A. The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. (Tr. 15-27). Under step one of the process, the ALJ found that Tuper had not engaged in substantial gainful activity since February 12, 2013, the alleged onset date. (Tr. 17).

4

At step two, the ALJ concluded that Tuper had the severe impairments of status post lumbar compression fracture, right knee internal derangement, and obesity. (*Id.*). At step three, the ALJ further found that Tuper did not have an impairment, or combination of impairments, that met or medically equaled any of the listed impairments in Appendix 1 of Subpart P of Part 404 of the relevant regulations. (Tr. 18).

Next, the ALJ determined that Tuper retained the Residual Functional Capacity ("RFC") to perform sedentary work, except that she was limited to occasionally lifting and/or carrying ten pounds; frequently lifting and/or carrying less than ten pounds; standing and/or walking up to two hours and sitting about six hours in an eight-hour workday; occasionally pushing and/or pulling ten pounds; occasionally climbing ramps and/or stairs, balancing, stooping, kneeling, crouching, and crawling; and, never climbing ladders, ropes, or scaffolds. (*Id.*).

At step four, the ALJ found that Tuper was unable to perform any past relevant work. (Tr. 21). At step five, the ALJ relied on the testimony of vocational expert ("VE") Peter A. Manzi and found that based on Tuper's age, education, work experience, and RFC, she could perform other jobs that exist in significant numbers in the national economy, including the positions of table worker (DOT # 739.687-182) and addresser (DOT # 209.587-010). (*Id.*). Accordingly, the ALJ found that Tuper was not disabled. (Tr. 22-23).

B. **Tuper's Contentions**

Tuper contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 9 at 1). First, Tuper maintains that the ALJ improperly failed to give controlling weight to the opinions of her treating physician Christina William, MD, without providing good reasons for doing so. (Docket

5

# 9-1 at 14-17). Next, Tuper argues that the ALJ erred by declining to give significant weight to "any of the medical opinions of record" (*id.* at 17), resulting in an RFC based on the ALJ's own lay judgment (*id.* at 18). Finally, Tuper contends that the ALJ improperly "cherry-picked" record evidence to support his non-disability finding. (*Id.* at 20-22).

## II.  Analysis

### A.  Application of the Treating Physician Rule

I turn first to Tuper's contention that the ALJ misapplied the treating physician rule. (Docket # 9-1 at 14-17). Specifically, Tuper argues that the ALJ did not "adequately explain his reasons for disregarding the opinions of Dr. William and did not rely on legal[ly] sufficient reasons for doing so." (*Id.* at 15). Tuper also claims that the ALJ's stated reason for discounting the weight given to Dr. William's opinions was "too vague for the reader to understand any rationale." (*Id.* at 16).

In response, the Commissioner does not dispute that Dr. William qualifies as a treating physician under the regulations. Rather, the Commissioner argues that the ALJ did not entirely reject Dr. William's opinions – instead affording them "some weight" – and that the ALJ's "reasoning and adherence" to the treating physician rule is clear based on the totality of his determination. (Docket # 12-1 at 19) ("[i]n short, the ALJ gave good reasons for declining to adopt Dr. William's opinions in full, and electing instead, to give her opinions only partial weight"). The Court disagrees with the Commissioner, and finds that the ALJ failed to provide "good reasons" for rejecting the opinions of Dr. William, Tuper's treating physician.

Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is

6

not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2)[2]; *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) ("the ALJ [must] give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence"). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician, because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must consider:

(1) the frequency of examination and length, nature, and extent of the treatment relationship;

(2) the evidence in support of the physician's opinion;

(3) the consistency of the opinion with the record as a whole;

(4) whether the opinion is from a specialist; and

(5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199. The regulations also direct the ALJ to "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32; *see also* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for

---

[2] These regulations apply to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. §§ 404.1520c & 416.920c apply.

7

the weight assigned to a treating physician's opinion . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations, and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

    Here, Tuper's challenge concerns four opinions given by Dr. William. The first, dated May 9, 2013, is reflected on a New York State Office of Temporary and Disability Assistance ("OTDA") form entitled "Medical Examination for Employability, Disability Screening, and Alcoholism/Drug Determination" and indicated that Tuper had a L1 lumbar fracture, but that her prognosis was good with treatment. (Tr. 350). Dr. William also indicated that Tuper may need to undergo kyphoplasty for treatment. (*Id.*). In terms of physical limitations caused by the fracture, Dr. William noted that Tuper was "very limited" in her ability to walk, stand, lift, carry, push, pull, bend, and climb, "moderately limited" in her ability to sit, and showed no evidence of limitations in her ability to see, hear, speak, or use her hands. (Tr. 351). Dr. William opined that Tuper was limited in her ability to conduct work activities because of the fracture, which had caused an approximate 25% height loss and significant pain. (*Id.*). Dr. William noted that she expected those limitations to last four to six months and recommended that Tuper engage in physical therapy treatment. (*Id.*).

8

Dr. William subsequently submitted to OTDA a questionnaire completed on May 31, 2013, regarding Tuper's impairments. (Tr. 362-67). Dr. William noted that Tuper's "treating diagnosis" was an L1 lumbar fracture, which occurred initially on March 19, 2013 (after Tuper lifted her mother out of a chair) and for which Tuper received treatment once a month. (Tr. 363-64). An MRI of Tuper's back conducted on May 15, 2013, confirmed a subacute compression fracture of the superior endplate of the L1 lumbar vertebra. (Tr. 365). Tuper exhibited symptoms of "lower back pain [with] ambulation, pushing, pulling, lifting, [and] prolonged walking," which were being treated with medication. (Tr. 363-64). Dr. William noted that Tuper's condition could "possibly" last "for [one year] [as] she seeks medical [and] surgical intervention for the fracture." (Tr. 364). Dr. William also indicated that she was unsure when Tuper could be expected to return to a full weight-bearing state. (Tr. 365).

Dr. William opined that Tuper could not lift or carry "for now," could only stand and/or walk for less than two hours per day, could sit for less than six hours per day, was limited in her ability to push and/or pull, and had other postural limitations due to her back fracture. (Tr. 366-67). Finally, Dr. William noted that Tuper also had a multilevel degenerative disc disease that would be a significant condition to Tuper's recovery. (Tr. 367).

On December 9, 2013, Dr. William completed another OTDA "Medical Examination for Employability, Disability Screening, and Alcoholism/Drug Determination" form. (Tr. 390-91). Dr. William again noted Tuper's L1 lumbar fracture stemming from the March 19, 2013 incident, this time reporting that she expected the condition to last another seven to eleven more months. (*Id.*). Dr. William also opined that Tuper was "very limited" in her ability to lift, carry, push, pull, bend, and climb, "moderately limited" in her ability to stand and

9

sit, and showed no evidence of limitations in her ability to walk, see, hear, speak, or use her hands. (Tr. 391).

Finally, about one year later on December 15, 2014, Dr. William completed a third such form. (Tr. 331-33). As it related to Tuper's L1 lumbar fracture, Dr. William noted the same functional limitations as those on the December 9, 2013 form and opined that those restrictions were expected to last another seven to eleven months. (Tr. 333).

In his decision, the ALJ discussed the record evidence, including a brief description of each of Dr. William's above-four opinions. (Tr. 18-21). At the conclusion of his one-paragraph summary of Dr. William's assessments, the ALJ accorded the opinions "only some weight" and noted simply, "[d]espite [Dr. William's] treating relationship with [Tuper], her opinions are inconsistent with the treatment record." (Tr. 21).

The ALJ's one-sentence explanation for discrediting Dr. William's opinions does not satisfy the treating physician rule. The ALJ's statement that Dr. William's four opinions are all "inconsistent with the treatment record" is far too conclusory to constitute a "good reason" for discounting the weight given to the opinions of Tuper's treating physician. The ALJ did not "identify[] the alleged inconsistencies in the record" and thus "failed to provide any basis for rejecting [Dr. William's] opinion[s]." *Erb v. Colvin*, 2015 WL 5440699, *12, 14 (W.D.N.Y. 2015) (remanding where ALJ gave treating physician's opinion "some weight" without providing an adequate explanation for doing so; "the ALJ's statement that the recited opinions were 'inconsistent with the record as a whole' is too conclusory to constitute a 'good reason' to reject the treating psychiatrist's opinions"); *see also Marchetti v. Colvin*, 2014 WL 7359158, *13 (E.D.N.Y. 2014) ("[u]nder the treating physician rule, an ALJ may not reject a treating physician's opinion based solely on . . . conclusory assertions of inconsistency with the medical

10

record . . . [;] [r]ather, an ALJ must provide some reasoned account as to why he finds the physician's opinion is inconsistent"); *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594 at *2 ("this . . . conclusory statement about the treatment record fails to fulfill the heightened duty of explanation"); *Crossman v. Astrue*, 783 F. Supp. 2d 300, 308 (D. Conn. 2010) (ALJ's statement that treating physician's opinion was "inconsistent with the evidence and record as a whole" . . . is "simply not the 'overwhelmingly compelling type of critique that would permit the Commissioner to overcome an otherwise valid medical opinion'") (quoting *Velazquez v. Barnhart*, 2004 WL 367614, *10 (D. Conn. 2004)).

Although the ALJ may choose to give less than controlling weight to the opinions of Dr. William, he must not only have good reasons based on evidence in the record for doing so, but he must explain his reasons in his decision; simply characterizing the opinion as "inconsistent" with Tuper's treatment record does not suffice. *See Drozdowski v. Colvin*, 2016 WL 5402698, *8 (W.D.N.Y. 2016) ("[t]here may be reasons to discount [the treating physician's] opinions or to give greater weight to other conflicting testimony and opinion evidence in the record, but the ALJ erred by failing to specifically state those reasons"). To the extent the Commissioner's brief posits explanations, it is well-settled that "[a] reviewing court 'may not accept appellate counsel's post hoc rationalizations for agency action.'" *Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) (quoting *Snell v. Apfel*, 177 F.3d at 134).

Accordingly, I conclude that the ALJ failed to provide "good reasons" for rejecting Dr. William's opinions and that remand is warranted. *See Halloran*, 362 F.3d at 33 ("[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician[']s opinion and we will continue remanding when we

encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion").

B. **Tuper's Remaining Contentions**

In light of my determination that remand is warranted because the ALJ erred in evaluating the opinions of Tuper's treating physician, I decline to address Tuper's remaining contentions that the ALJ improperly based the RFC on his own lay opinion and improperly "cherry-picked" record evidence. *See*, *e.g.*, *Drozdowski v. Colvin*, 2016 WL 5402698 at *8 (declining to reach plaintiff's remaining contentions where remand was warranted based on the ALJ's failure to comply with the treating physician rule); *Erb v. Colvin.*, 2015 WL 5440699 at *15 (declining to evaluate whether ALJ erred in assessing plaintiff's RFC or credibility where ALJ erred in evaluating opinion of plaintiff's treating physician, thus warranting remand on that basis); *Norman v. Astrue*, 912 F. Supp. 2d 33, 85 n.79 (S.D.N.Y. 2012) ("[b]ecause I find that remand is proper on the basis of the ALJ's failure to properly develop the record and to properly apply the treating physician rule, I do not reach plaintiff's arguments with respect to (1) the ALJ's determination of his RFC at step four and (2) whether the ALJ carried his burden at step five of the analysis[;] [t]he aforementioned legal errors cause the remaining portions of the ALJ's analysis to be inherently flawed").

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and Tuper's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this

case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
August 31, 2018